**MADDEN v. MAC SIM BAR PAPER CO.**
**No. 7716.**

Circuit Court of Appeals, Sixth Circuit.
May 8, 1939.

Harry C. Howard, of Kalamazoo, Mich. (William J. Howard and Harry C. Howard, both of Kalamazoo, Mich., on the brief), for appellant.

D. B. Sharpe, of Kalamazoo, Mich. (E. W. Stone, of Allegan, Mich., and Mason, Sharpe & Stratton, of Kalamazoo, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Appellant is a manufacturer of printer's ink in Chicago. Appellee, a Michigan corporation, manufactures paper board for packing cases. Its plant and principal office are located at Otsego, Michigan.

The Wolverine Paper Company, having a plant near that of appellee, manufactured waxed paper. Some time prior to 1925 the Wolverine Company went into bankruptcy, which resulted in a loss of about $18,000 to appellee. S. B. Monroe, one of appellee's directors, acquired the property of Wolverine, as trustee for its bondholders. In an effort to recoup its loss appellee purchased the Wolverine inventory, and with the permission of Monroe, used the Wolverine mill to convert this inventory into finished products which it sold. In this way appellee substantially retrieved its losses and thereafter continued to operate the Wolverine plant, by permission of Monroe, as the "Otsego Waxed Paper Company, Division of Mac Sim Bar Paper Company." The product of this Division, as the name indicates, was waxed paper.

The profits of the Division from November, 1925, to November 1, 1929, were about $26,000. The profit from January 1, 1929, to October 31, 1929, was $14,780.76, but the profit for October, 1929, had dwindled to $160.11. The court will take

judicial notice that by October the country was in the throes of an economic depression.

About October, 1929, the directors of appellee decided to incorporate the Division under the name of The Otsego Waxed Paper Company, herein called Otsego.

The organization was completed by November 1 and Otsego took over the Division and began business on that date. Its capital stock was $100,000 divided into shares of $10 each. The Division at that time had an inventory of cash, accounts receivable and merchandise in the amount of $88,443.59; but it owed $29,003.57 and appellee had made additions to the buildings, machinery and equipment during October of $3,984.83. An appraisal by a public accountant indicates that these figures represent sound values and it was agreed between Otsego and appellee that in consideration of appellee's investment of around $64,000 in the Division, Otsego would issue to appellee $50,000 of its stock and execute a note for $14,000. This agreement was carried out but Monroe, Trustee, still owned the lands, buildings, machinery, etc., so that it was agreed between appellee, Otsego and Monroe, Trustee, that Monroe would transfer title to this property for $50,000 of the stock of appellee and a note of Otsego for $17,000, thus making the price of the property sold by Monroe, Trustee, $67,000. It was further agreed that Otsego would issue $50,000 of its stock to appellee to compensate it for the stock it had issued to Monroe. This agreement was likewise carried out. The appraisal and the weight of the proof indicate that the property so conveyed was worth $67,000 at a fair valuation.

The directors of Otsego were Charles E. Nelson, Lewis W. Dickinson, Marvin A. Hart, E. W. Stone and three others. Of these Nelson, Stone and two others were also directors of appellee. Nelson was President and General Manager of appellee and President of Otsego. Dickinson was Assistant Treasurer of appellee and Treasurer of Otsego. Hart, an employee of appellee, was Secretary of Otsego. Otsego's board did not hold regular monthly meetings but did hold six or eight meetings a year and for convenience these were held immediately after the adjournment of appellee's board and at appellee's office. At these meetings the usual business of a board of directors was transacted. Otsego had its own bookkeeper who kept the books

in the Otsego plant. Its books were audited annually as a separate and distinct audit from the books of appellee. It filed its annual reports with the State and paid an annual franchise tax. It filed financial reports with credit agencies and these reports were kept separate from the financial statements of appellee. Mail for both companies was delivered at appellee's office and there separated and that belonging to Otsego was sent over to it.

Otsego's general managers and superintendents were employed by its board at fixed salaries. The manager ran the business. He had entire charge of the plant, did the buying and selling and fixed the sales prices but the Company lost from the beginning. It lost $6,229.58 during the first two months of operation and there is evidence tending to show that it lost $66,000 up to March 20, 1931.

In an effort to stop these losses Joseph T. O'Rourke, experienced in the waxed paper business, was made General Manager and Vice-President of Otsego by its board, but the losses continued, largely due, no doubt, to the general business depression. O'Rourke was never identified in any capacity with the affairs of appellee. He began to purchase ink from appellant about May, 1931, and his purchases, averaging more than $400 per month, were charged solely to the account of Otsego. Appellant and O'Rourke both testified that O'Rourke told appellant that any credit would be guaranteed by appellee, but Dickinson testified that he told O'Rourke several times that appellee was not behind the accounts. O'Rourke did not display a particularly friendly attitude toward appellee as a witness, due perhaps to the fact that dissatisfaction arose as to the terms of his contract.

Otsego began to fall behind in its payments and although it would occasionally send a check, the account grew until it finally amounted to about $22,000. In October, 1932, appellant began strenuous efforts to collect. He met Nelson in Chicago and testified that Nelson told him that he would shortly get a check for the account; and that the stockholders of Otsego and appellee were one and the same people and that appellee was back of Otsego, and that he, Nelson, called his attention to a paragraph in a financial statement to the effect that when Otsego got into difficulty there were funds available from appellee. Nelson denied that he ever made such

statements. Appellant testified that he later went to Otsego and saw Dickinson and Stone, who advised him that appellee owned Otsego "lock, stock and barrel" and intended to liquidate it; that he thereupon at Nelson's request called a creditors' meeting in Chicago; that Nelson, Dickinson and Stone were there and that Stone spoke for appellee and that various propositions and counterpropositions were made without avail.

Soon thereafter appellant filed garnishments against Otsego's bank account for $7,500 and $4,500 respectively. These garnishments were largely the actuating causes of Otsego's bankruptcy in February, 1933. Appellant filed its claim in the bankruptcy proceedings and eventually received dividends aggregating $10,099.93. The final dividend was paid in June, 1935, and in November appellant filed his bill of complaint against appellee, seeking to recover the balance of its claim, $12,611.84, and interest.

The gravamen of the bill is (1) that Otsego was a mere agent of appellee and (2) that it was fraudulently created and used by appellee as a sham or dummy to protect itself against its liabilities to appellant and other creditors. It is also urged, in the assignment of errors, though not averred in the bill, that appellee guaranteed the payment of its account.

The District Court dismissed the bill. It found that Otsego maintained its status as a separate corporate entity at all times until it became bankrupt; that its corporate existence was not a sham and was not used by appellee as an instrument for concealment; that appellee had not represented to appellant or to the public that Otsego's business activities were those of appellee. It also held that appellee had not guaranteed appellant's claim.

■ We find no sufficient reason to disturb the decree. As pointed out, there were conflicts in the testimony and it was the duty of the court to reconcile them if possible and so to determine what the truth was. Upon this feature much weight must be given to the findings for the court saw the witnesses, heard them testify and observed their manner and demeanor upon the stand. Laursen v. Lowe, 6 Cir., 46 F. 2d 303. It must be kept in mind that regardless of what may have been said to appellant touching a guaranty of his claim he continued to credit Otsego alone and never asserted any right under a supposed guar-

anty until after the bankruptcy assets had been completely exhausted. Further, there is no evidence that any officer of Otsego was ever authorized by appellee to guarantee the payment of any part of appellant's claim. There was no guaranty in writing sufficient to satisfy the Michigan Statute of Frauds (§§ 13417 and 13419, Comp. Laws of Michigan of 1929) and the court so found.

In Shepherd v. Banking & Trust Co. of Jonesboro, 6 Cir., 79 F.2d 767, this court, at page 769, considered the status of corporations allied to each other by the control of the stock of one by the other. The opinion is comprehensive, it states the general rule and the exceptions thereto. We think that the District Court correctly applied the law of the Shepherd case to the facts found. Any further discussion of the opinion in that case would be superfluous.

■ We think appellant has failed to show by the weight of the evidence that Otsego was an agent or instrumentality of appellee. Appellant points out that in the report to Dun & Company dated September 2, 1932, Otsego stated that it had good financial backing should it require it. This statement was justified because at that time appellee had favored it by loans of about $8,000 for which it had executed its notes, but these loans were as compatible with the non-existence of agency as with agency. Hooper-Mankin Co. v. Matthew Addy Co., 6 Cir., 4 F.2d 187, 192. There is no such quantum of evidence as is required to establish fraud to indicate that Otsego was a sham or dummy. It was organized to manufacture and sell a product that had little relationship to that of appellee and its sales were made by its own individual salesmen. Its losses were as compatible with the then existing business conditions as with any other cause. The fact that its Treasurer signed checks and conducted correspondence from his office as Assistant Treasurer of appellee has but little probative force. The two plants were only about 150 yards apart and this practice seems to have been a matter of convenience. See Hooper-Mankin Co. v. Addy Co., supra.

■ Appellant relies strongly upon the opinion in Re Otsego Waxed Paper Co., D. C., 14 F.Supp. 15, to the effect that the record as there made warranted the conclusion that Otsego was an adjunct or instrumentality of appellee. But it is clear enough that we are dealing here with a different record and with a controversy be-

tween different parties and that the case in bankruptcy is not res adjudicata of the issues here.

We think the decree was right upon the grounds herein indicated and find no necessity for determining whether appellant's prosecution of his claim in bankruptcy was a bar to its assertion here.

Decree affirmed.